* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties necessary to the determination of this matter are properly before the Commission, the Commission has jurisdiction of this matter, the parties are subject to the North Carolina Workers' Compensation Act, an employer-employee relationship existed between the named employer and the named employee, and the carrier liable on the risk is correctly named.
2. All parties are correctly designated.
3. The date of injury is April 9, 2002.
4. The average weekly wage of plaintiff is $537.68.
5. The parties stipulated into evidence as Stipulated Exhibit 1, documents including plaintiff's medical records, Industrial Commission forms, and a job description.
 * * * * * * * * * * *
Based upon the evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 52 years old, having been born September 25, 1951. Plaintiff had finished the twelfth grade, and had a work history of owning a florist business and of being a business manager for a private school.
2. Plaintiff became employed with defendant-employer in 1993 as a telecommunicator. As a telecommunicator, plaintiff's job duties included receiving emergency and non-emergency calls from the public for service, and dispatching police, fire, or ambulance units to the scene in response thereto. Plaintiff's job mostly required her to sit before a console for twelve-hour shifts answering the radio and telephone and typing. Plaintiff would also get up to go to the printer, to access books, or to go to the door, but her job was primarily seated. Plaintiff's job required quick thought and good judgment as well as multi-tasking in a stressful, high intensity environment.
3. On April 9, 2002, plaintiff tripped over a chair which caused her to fall forward over the chair landing on the floor on her buttocks and striking her back and legs against the wall.
4. Plaintiff experienced immediate pain and was taken by ambulance to Frye Regional Medical Center. Following x-rays, plaintiff was diagnosed with a lumbar strain and contusion and written out of work for two days.
5. At the time of her April 9, 2002, injury, plaintiff had several pre-existing medical problems including asthma, chronic obstructive pulmonary disease (COPD), lupus, and multiple sclerosis. Although plaintiff had these diagnoses prior to her April 9, 2002 injury, she walked without a cane (although she had used a cane for a time in the past) and attended work regularly without significant sick days.
6. On April 11, 2002, at the instruction of defendant-employer, plaintiff presented to Hart Industrial Clinic complaining of severe back pain with radiation into the right thigh and leg. Plaintiff was diagnosed with a back strain with radiculopathy.
7. Plaintiff was treated conservatively by Hart Industrial Clinic, including a course of physical therapy. An MRI taken on April 25, 2002, revealed a mild diffuse disc bulge at L4-L5 but was otherwise interpreted as normal. As plaintiff continued to experience pain, she was referred to Dr. John de Perczel, an orthopedic surgeon.
8. Plaintiff provided timely written notice of her injury by accident to defendants. On April 30, 2002, defendant-employer accepted plaintiff's claim as compensable on a Form 60 Agreement for Compensation.
9. Plaintiff presented to Dr. de Perczel on May 6, 2002. He found plaintiff to be very stiff and sore and was of the opinion that plaintiff had a contusion and strain of the back with myofascitis, an inflammation of the soft tissue. Dr. de Perczel was of the opinion that plaintiff's bulging disc at L4-L5 was not compressing the nerves and was not the cause of plaintiff's back pain. It was recommended that plaintiff attend physical therapy, not lift greater than five pounds, and potentially be referred to a pain center. When plaintiff returned to Dr. de Perczel on May 14, 2002, her symptoms had continued to worsen.
10. On May 17, 2002, plaintiff returned for the first time to defendant-employer and was given a job in the records division. When a member of the public needed a document, it would have been plaintiff's job to retrieve the document and make copies if necessary. This job was not physically demanding and did not require lifting over five pounds. Plaintiff would have been allowed to alternate sitting and standing. Plaintiff performed this job for approximately three and one-half hours before she was required to go home due to her pain. Plaintiff has not returned to work since that date for defendant-employer or any other employer.
11. On May 28, 2002, Dr. de Perczel was of the opinion that plaintiff should be seen by a physiatrist, Dr. Stutesman, because she was not improving. Plaintiff was also referred to the Unifour Pain Treatment Center for an evaluation regarding whether or not injections would be useful to her. Plaintiff was written out of work until she could be seen by Dr. Stutesman.
12. On June 11, 2002, defendant-employer sent plaintiff not to Dr. Stutesman as requested by Dr. de Perczel but to Dr. Paul Lafavore, an anesthesiologist with training in treating chronic pain conditions. Dr. Lafavore was of the opinion that plaintiff had myofascial pain and recommended that plaintiff receive an injection. Plaintiff declined to undergo the injection as she has a form of lupus which affects her skin and any invasion of her skin can cause problems. Thus, as an alternative to an injection, Dr. Lafavore recommended physical therapy and that plaintiff return on an as-needed basis.
13. On June 27, 2002, plaintiff returned to Dr. de Perczel. At that time he was of the opinion that although plaintiff continued to experience pain, she had not improved from the first time he had seen her until the last time he had seen her and there was nothing that he or the other doctors whom she had consulted could do for her. Thus, even though he believed plaintiff was in pain, he did not think she would be improving physically and that her condition was static. Dr. de Perczel did not assign plaintiff an impairment rating. Dr. de Perczel released plaintiff with a final diagnosis of chronic soft tissue injury to the back and right buttocks. He further recommended that plaintiff return to work, as she would hurt whether she was at home or at work.
14. Dr. de Perczel was of the opinion that although multiple sclerosis and lupus can be aggravated by the stress of an injury, he did not see any obvious exacerbation of plaintiff's preexisting conditions caused by her compensable injury. Dr. de Perczel never treated plaintiff for her lupus, multiple sclerosis, COPD, or depression, and never consulted with plaintiff's treating doctors regarding these conditions. Dr. de Perczel never reviewed a job description of plaintiff's job before he released her to return to that job.
15. On June 27, 2002, plaintiff presented to Dr. Wayne Wilson, a board-certified family practitioner and plaintiff's primary care physician. Plaintiff complained of back pain and was given Vicodin as well as continued on her other medications. She was also referred to an orthopedist and a rheumatologist for her lupus. At that time plaintiff had severe back pain and radiculopathy into the right leg. Dr. Wilson wrote plaintiff out of work indefinitely pending further medical evaluations of her conditions.
16. Following her June 27, 2002, visit with Dr. Wilson, plaintiff continued to treat with him receiving pain medication and seeking medication in August 2002 for anxiety and through May 2004 for worsening depression. Dr. Wilson was of the opinion, and the Full Commission finds as fact, that plaintiff's anxiety and depression were at least materially aggravated by her back injury and the resulting pain and complications.
17. Dr. Wilson was of the opinion, and the Full Commission finds as fact, that plaintiff's compensable injury to her back materially aggravated her preexisting non-work-related conditions of lupus and COPD and that the pain and stress caused by her pain also materially aggravated those conditions.
18. Dr. Wilson was of the opinion that plaintiff is permanently disabled due to her back pain and COPD.
19. Prior to plaintiff's compensable injury on April 9, 2002, plaintiff had severe COPD with a bronchospastic component. She was treated for this condition by Dr. Frederick Owens, a board-certified pulmonologist. Plaintiff's condition at that time was a high Class II to low Class III breathing impairment but plaintiff was able to walk 100 feet, grocery shop, and take one flight of stairs with significant shortness of breath.
20. On May 16, 2002, approximately four and one-half weeks after her compensable injury, plaintiff presented to Dr. Owens complaining of a worsening of her shortness of breath. At that time, plaintiff was unable to climb stairs and had to sit up to breath. Plaintiff indicated at that visit that she had had a recent back injury and that had made her breathing feel worse. Dr. Owens was of the opinion that plaintiff had bad breathing, wheezing, coughing, phlegm production, and poor exercise tolerance.
21. Dr. Owens was of the opinion, and the Full Commission finds as fact, that the deconditioning plaintiff exhibited after her compensable injury significantly contributed to aggravating plaintiff's preexisting chronic lung disease. He was of the opinion that the significant decline in plaintiff's function would not be seen in a normal patient with COPD and asthma between 1999 and 2002. He was of the opinion that deconditioning led plaintiff's disease process to worsen in that it aggravated and exacerbated her decreased breathing functions. He was of the opinion that a person who has chronic lung disease such as plaintiff who has to slow down because of being ill or being in the hospital becomes deconditioned, i.e., loses muscle tone and function. When a patient such as plaintiff with no reserve lung capacity has a significant decrease, the pulmonary function decreases and the patient exhibits more symptoms.
22. According to Dr. Owens, a Fletcher study/diagram reveals an objective measure of plaintiff's deteriorating function between pulmonary function tests performed in 1998 and those performed on May 16, 2002, approximately one month following her compensable injury. Dr. Owens was of the opinion, and the Full Commission finds as fact, that plaintiff's objectively worsened condition was directly related to plaintiff's inability to work, move, and exercise due to her back pain.
23. Dr. Owens was further of the opinion that plaintiff lost much more pulmonary function over a period of time even than an average smoker would who had continued to smoke two packs per day. Dr. Owens attributes plaintiff's precipitous drop in lung function to her compensable injury and her resulting inactivity, and the Full Commission finds this to be the case. He also attributes some of the deconditioning to the pain medications and antidepressants which plaintiff has been required to take due to her compensable injury, as they sedate plaintiff resulting in less movement and greater deconditioning.
24. Dr. Owens continued to see plaintiff periodically through March 18, 2004. At that time, plaintiff had a Class IV breathing impairment that rendered her totally disabled and unable to work.
25. On March 24, 2004, plaintiff presented to Dr. Michael J. DiMeo, a board-certified pulmonologist, for a one-time examination at the request of defense counsel. Following a record review, interview with plaintiff, PFT's, and a physical exam, Dr. DiMeo was of the opinion that plaintiff had COPD with a component of asthma. Dr. DiMeo was of the opinion that plaintiff was totally disabled and had a Class IV breathing impairment.
26. Dr. DiMeo agreed with Dr. Owens that plaintiff was probably Class II to low Class III breathing impaired in 1998 and that by May 16, 2002, she had a very severe obstruction. However, Dr. DiMeo was of the opinion that plaintiff's pain medications did not have a sedative affect on her and did not aggravate or exacerbate her condition. Dr. DiMeo did indicate that plaintiff's inability to work resulted in the deconditioning, which worsened her breathing function.
27. On April 9, 2002, plaintiff sustained an admittedly compensable injury by accident to her back.
28. As a direct and proximate result of plaintiff's compensable back injury, plaintiff has sustained back and right leg pain resulting in deconditioning and immobility as well as an aggravation or exacerbation of her anxiety and depression.
29. As a direct and natural result of the back pain and leg pain caused by plaintiff's compensable injury, the resulting medication, and immobility, plaintiff has become deconditioned and has had an exacerbation of her COPD.
30. As a direct and proximate result of plaintiff's back and leg pain as well as her aggravated and exacerbated COPD and anxiety and depression, plaintiff has been unable to earn wages with defendant-employer or any other employer from April 10, 2002, and continuing.
31. Plaintiff did attempt a trial return to work for approximately three and one-half hours on May 17, 2002, but due to her compensable injury was unable to continue that work.
32. Plaintiff is entitled to temporary total disability compensation at the rate of $358.47 per week from April 10, 2002, and continuing.
33. Due to plaintiff's back pain and the aggravation of her preexisting chronic obstructive pulmonary disease and the aggravation of her anxiety and depression, as well as the unrelated physical conditions from which she suffers, plaintiff is temporarily totally disabled from even sedentary work.
34. Plaintiff is entitled to have defendants provide medical treatment for her compensable back injury as well as her aggravated COPD and anxiety and depression for as long as the same is reasonably designed to provide relief, effect a cure, or lessen her period of disability.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 9, 2002, plaintiff sustained an admittedly compensable injury by accident to her back. As a direct and proximate result of plaintiff's compensable back injury, plaintiff has sustained back and right leg pain. As a direct and natural result of the back pain and leg pain caused by plaintiff's compensable injury, the resulting medication, and immobility, plaintiff has become deconditioned and has had an exacerbation of her COPD, as well as an aggravation or exacerbation of her anxiety and depression. N.C. Gen. Stat. §97-2(6).
2. As a direct and proximate result of plaintiff's back and leg pain as well as her aggravated and exacerbated COPD and anxiety and depression, plaintiff has been unable to earn wages with defendant-employer or any other employer from April 10, 2002 and continuing. Plaintiff is therefore entitled to temporary total disability compensation at the rate of $358.47 per week from April 10, 2002 and continuing. N.C. Gen. Stat. §§ 97-2(9), 97-29.
3. Plaintiff attempted a trial return to work for approximately three and one-half hours on May 17, 2002, but, due to her compensable injury, was unable to continue that work. N.C. Gen. Stat. § 97-32.1.
4. Plaintiff is entitled to have defendants provide medical treatment for her compensable back injury as well as her aggravated COPD and anxiety and depression for as long as the same is reasonably designed to provide relief, effect a cure, or lessen her period of disability. N.C. Gen. Stat. § 97-25.
5. Defendants admit that plaintiff provided timely written notice to defendants of her injury by accident on April 9, 2002, pursuant to N.C. Gen. Stat. § 97-22. Defendants provide no legal basis for their contention that plaintiff owed an additional duty under N.C. Gen. Stat. § 97-22 to give notice to defendants of the consequent aggravation of plaintiff's pre-existing medical conditions. Because no such additional duty existed, the Full Commission holds that plaintiff provided defendants with adequate and timely notice of her injury by accident pursuant to N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff is entitled to have defendants provide temporary total disability compensation benefits to plaintiff at the rate of $358.47 for as long as plaintiff remains disabled. This amount is subject to an attorney's fee approved in Paragraph 2.
2. A reasonable attorney's fee in the amount of 25% of the compensation benefits awarded plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by defendants by deducting from the sums owed plaintiff and paying every fourth check to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable back injury and her aggravated COPD and anxiety and depression as long as the same are reasonably designed to effect a cure, provide relief, or lessen plaintiff's period of disability.
4. Defendants shall provide, and plaintiff shall participate in, such physical therapy (including, if appropriate, pulmonary rehabilitation) as will aid plaintiff in returning to employment.
5. Defendants shall pay costs.
This 22nd day of June, 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN